# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| OAKWOOD PRODUCTS, INC., | ) | Civil Action No.: 9:20-cv-04107-DCN |
| | ) | Civil Action No.: 9:22-cv-01538-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SWK TECHNOLOGIES, INC., and ACUMATICA, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

Plaintiff Oakwood Products, Inc. ("Oakwood") obtained a jury verdict on its claim for violation of the South Carolina Unfair Trade Practices Act against Defendants SWK Technologies, Inc. ("SWK") and Acumatica, Inc. ("Acumatica"). As a result, Oakwood is entitled to an award of the reasonable attorney's fees and costs authorized by statute. *See* S.C. Code § 39-5-140(a) ("Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs."). It is recognized that "the SCUTPA mandates that a court award attorney's fees and costs to a successful party." *See Liberty Mut. Ins. Co. v. Emp. Res. Mgmt., Inc.,* 176 F. Supp. 2d 510, 531 (D.S.C. 2001) (*citing* S.C. Code § 39–5–140(a)) ("[U]pon the finding by the court of a violation of this article [the SCUTPA], the court *shall* award to the person bringing such action under this section reasonable attorney's fees and costs.") (emphasis in original order). The use of the term "shall" in a statute means that the action is mandatory. *See Johnston v. S.C. Dep't of Lab., Licensing, & Regul., S.C. Real Est. Appraisers Bd.*, 365 S.C. 293, 296–97, 617 S.E.2d 363, 364 (2005).

As discussed more fully below, each of the applicable factors relevant to the Court's determination of a reasonable fee award supports Oakwood's request for an allowance of fees against Defendants pursuant to the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code § 39-5-10, *et seq.*, in the amount of **Five Hundred Fifty-One Thousand Seven Hundred and Eight Dollars and One Cent ($551,708.01).**

## INTRODUCTION

The requested award of attorney's fees and expenses to Oakwood is fully justified. The fees and expenses incurred in this case were already reduced through multiple discounts and the provision of services at below market rates. *See* Combined Invoices, attached as Exhibit A; *see also* Table of Invoices and Payments, attached as Exhibit B. The litigation efforts by Oakwood's counsel were effective and efficient. *See* Affidavit of Ellis R. Lesemann, Esq., attached as Exhibit C. The jury awarded Oakwood $275,000.00 in actual damages under four causes of action: (i) violation of the South Carolina Unfair Trade Practices Act; (ii) breach of contract; (iii) breach of warranty; and (iv) unjust enrichment. The jury found both Defendants liable under SCUTPA.

As the prevailing party, Oakwood is now entitled to recover its reasonable attorney's fees and expenses incurred. The affidavits, declarations, and supporting documentation provide ample support for the Court's assessment of the reasonableness of Oakwood's fee request against the applicable factors identified under Local Civil Rule 54.02. *See* Affidavit of Steven R. Kropski, Esq., attached as Exhibit D; Declaration of Greg Horton, Esq., attached as Exhibit E; and Affidavit of Patrick J. McLaughlin, Esq., attached as Exhibit F. These four local practitioners have each confirmed that the hourly rates charged were reasonable, the scope of legal work was appropriate and necessary, and a successful and beneficial outcome was obtained.

The hourly rates charged are far below the hourly rates that are regularly awarded in complex litigation matters in federal court in other jurisdictions. *See, e.g.,* the "Fitzpatrick Matrix," attached as <u>Exhibit G</u>; *see also* the "Laffey Matrix," attached as <u>Exhibit H</u>. Once a fee dispute is before it, however, a district court "may consider, but is not bound by," any matrix. *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025). The *Laffey* matrix is a useful starting point to determine fees, but is not a required referent. *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009). The Fitzpatrick Matrix rates have been determined to be more in line with the prevailing market rate (the District of Columbia) and thus "more reasonable." *J.T. v. D.C.,* 652 F. Supp. 3d 11, 28 (D.D.C. 2023). Oakwood has included the two matrices with its Motion to illustrate that fees awarded in complex federal court litigation in the District of Columbia area are several hundred dollars per hour higher than those being requested in this case. By way of comparison, the rate indicated by the Laffey Matrix for Mr. Lesemann would be $1141 per hour, while the Fitzpatrick Matrix rate would be $782 per hour. This would not be reasonable rates for the District of South Carolina, but do underscore the fact that hourly rates of $375 and below are reasonable.

As discussed in detail below and in the supporting affidavits and materials, the requested amount is appropriate, reasonable, well-substantiated, and fully documented. Oakwood respectfully requests that the Court enter a full award.

## **LEGAL STANDARD**

Under Local Civil Rule 54.02(A), "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978), and shall state any exceptional circumstances and the ability of the party to pay the fee." *See* Local Civ. Rule 54.02(A) (D.S.C.) In *Barber,* the Fourth Circuit specified the following factors for analysis: (1)

the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at 226. The Court's determination of a reasonable fee award must be accompanied by detailed findings of fact with regard to the factors considered. *Id*.

While the Court must consider all twelve of the factors, the Court is not required to rigidly apply these factors, as not all may affect the fee in a given case. *See CT & T EV Sales, Inc. v. 2AM Grp., LLC*, No. CA 7:11-1532-TMC, 2012 WL 3010911, at *1 (D.S.C. July 13, 2012). Provided the factors are considered and findings duly made, such determination will not be overturned on appeal "unless under all of the facts and circumstances it is clearly wrong" because "the allowance of attorneys' fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *See Shealy v. Dixon Hughes, PLLC*, No. 2:10-CV-714-DCN, 2011 WL 13323837, at *2 (D.S.C. Oct. 24, 2011) (quoting *Barber*, 577 F.2d at 226).

## ARGUMENT

### I. OAKWOOD IS ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES AND EXPENSES AS A PREVAILING PLAINTIFF UNDER SCUTPA

Oakwood is entitled to recover its reasonable attorney's fees and non-taxable expenses in addition to taxable costs allowed to a prevailing plaintiff. *See* S.C. Code § 39-5-140(a) ("Upon the

finding by the court of a violation of this article [the SCUTPA], the court shall award to the person bringing such action under this section reasonable attorney's fees and costs"); *see also* Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

Oakwood has proven, by a preponderance of the evidence, that SWK engaged in unlawful trade practices resulting in actual, ascertainable damages to Oakwood and having an adverse impact on the public interest. (ECF No. 245.) The jury also found that SWK's violation of SCUTPA was within the scope of SWK's agency relationship with Acumatica, such that Acumatica was vicariously liable for the unlawful trade practices. *See* Jury Verdict (ECF No. 245.)

The attorney fee provision under SCUTPA is "a legitimate tool which supports the policy objectives of the statute," which is to discourage unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce. *See Taylor v. Medenica*, 331 S.C. 575, 579, 503 S.E.2d 458, 460 (1998) (recognizing the attorney's fee provision of SCUTPA as "is a legitimate tool which supports the policy objectives of the statute" and awarding $524,068.00 in attorney's fees and costs following treble damages). As the provision is mandatory, Oakwood is entitled to an award of fees and expenses under SCUTPA, which was put in place by the legislature to deter and punish those who engage in unfair and deceptive acts. However, the Court must still review and determine whether the amounts requested are reasonable.

## II. THE FEES AND EXPENSES REQUESTED ARE REASONABLE AND APPROPRIATE

### A. The Requested Amount is Fully Recoverable under the *Barber* Factors.

In accordance with Local Civil Rule 54.02(A) (D.S.C.), the Court must consider each of the *Barber* factors in determining whether the attorney's fees requested by Oakwood are reasonable.

### i.     Time and Labor Expended (the First *Barber* Factor)

Oakwood's counsel expended significant effort but did so appropriately and in response to the manner in which the case was defended. The legal work to obtain the recent jury verdict began in September 2020 and continued until May 2025, representing over four and a half years of active litigation. Upon the entry of the jury's verdict, the case reached its 245th docket entry.  The docket will exceed 260 entries before the briefing cycle for post-trial motions is completed.

Early focus was placed on the Master Services Agreement and Statement of Work, establishing the foundation for breach of contract and warranty claims against SWK, but expanded as it became clear that SWK (and Acumatica) was engaged in a pattern of unlawful business practices that were having an adverse impact on the public interest. Once the case was filed, significant attention and effort was devoted to discovery, including discovery that confirmed the capability of repetition. The parties exchanged numerous sets of interrogatories, requests for production, and requests for admission. Nineteen (19) depositions were taken, including depositions in Vermont, North Carolina, and Georgia.  The consolidated cases involved the filing of over forty (40) motions.[1]  The litigation was intensive, but successful.  Oakwood obtained a jury verdict holding both SWK and Acumatica liable under SCUTPA and recovering a significant amount of damages.  Both Defendants took an aggressive and unforgiving posture throughout the case, rejecting their respective liability and refusing to make Oakwood whole. While a defending

---

[1] The motions filed in the consolidated cases include the following: (a) Motion to Amend Complaint to add SCUTPA claim based on evidence of impact upon public interest; (b) Motion to Amend; (c) multiple Motions to Compel Discovery from SWK and Acumatica; (d) Motion for Leave to Contact Former Customers; (e) Motion to File Documents Under Seal; (f) Motions to Alter or Amend Court Orders; (g) Motion to Consolidate SWK and Acumatica cases; (h) Motion to Strike Declaration of Lena Joseph; (i) Motion for Leave to Serve Subpoenas; (j) Motions to Quash Subpoenas; (k) multiple Motions for Partial Summary Judgment; (l) Motions for Protective Orders; (m) multiple Motions for Summary Judgment; and (n) multiple Motions In Limine.

litigant has a right to mount an unyielding defense, there are consequences to bear when a statute provides a right to a prevailing plaintiff to recover fees and expenses. Defendants refused, on multiple occasions, to mediate or negotiate in good faith, which required a trial.

Oakwood respectfully asks the Court to find the amount of time spent on the consolidated cases to be reasonable and necessary to the successful prosecution of the issues presented, based on the invoices that have been issued and the multiple affidavits and declarations confirming that the time and labor expended was proper.

    ii.    **Novelty and Difficulty of the Questions Raised (the Second *Barber* Factor)**

Successful verdicts on SCUTPA claims are rare. This case presented many complex legal issues and involved novel and difficult issues. *See, e.g.,* Kropski Aff., at ¶ 6; McLaughlin Aff., at ¶ 7; Horton Decl., at ¶ 10. This case involved the assimilation, organization and presentation of a significant quantity of information relating to a complex software system, which has been recognized as supporting an award of fees. *See, e.g., Sherrill v. J. P. Stevens & Co.,* 441 F. Supp. 846, 848 (W.D.N.C. 1977), *aff'd*, 594 F.2d 858 (4th Cir. 1979). The claims and defenses required significant factual development in addition to the time devoted to legal research and the gathering of evidence to show an impact on the public interest, which Defendants fought at every turn. *See* Lesemann Aff., at ¶¶ 12, 14 – 15. Oakwood succeeded in meeting its burden of proving SWK's violation of SCUTPA, as well as Acumatica's liability under SCUTPA under a theory of vicarious liability. The novelty and difficulty of the questions raised are in favor of a full award.

    iii.    **Skill Required to Properly Perform the Legal Services Rendered (the Third *Barber* Factor)**

This matter involved a complete jury trial as well as complex motions practice. The evidence in this case needed to be developed appropriately and methodically to avoid the series of

dispositive motions filed by both Defendants. *See* Lesemann Aff., at ¶¶ 7, 12 – 13, 15. A successful outcome required proof of deceptive acts, impact on the public interest, principal/agent liability, and other principles to obtain a verdict. A material level of skill is necessary to properly perform these tasks. *See, e.g.,* Kropski Aff., at ¶ 14; McLaughlin Aff., at ¶¶ 7 – 8; Horton Decl., at ¶¶ 10, 14. Oakwood's counsel succeeded in obtaining a jury verdict on four causes of action in a complicated case in which Defendants have inherent subject matter expertise, as working with Acumatica ERP is what they do day in and day out. Oakwood, on the other hand, is a chemical company, who had to show not only that it was wronged but that other similarly situated business consumers were as well. This factor also supports a full award.

   **iv. Attorney's Opportunity Costs in Pressing the Instant Litigation (the Fourth *Barber* Factor)**

  The extensiveness of this litigation, the approach adopted by the defense, and the time commitment required to pursue a civil proceeding in federal court does preclude other employment opportunities. *See Sherrill,* 441 F. Supp. at 848 (stating that "[a]ny case which requires a commitment of over 1,300 lawyer hours over a period of four and one-half years is bound to restrict the work a law firm can do for other clients."); *see also Liberty Mut.,* 176 F. Supp. 2d at 534 ("Here, based on the length and complexity of the discovery, pre-trial preparation and trial, as demonstrated by counsel's time entries, it necessarily follows that plaintiff's counsel was unable to perform work for other clients."). This case required more than 2,600 hours of time, which has been discounted to reflect the 2,453 hours reflected on the invoices. *See* Lesemann Aff., at ¶ 16. The time devoted to this matter, as detailed in the supporting documentation, created a significant opportunity cost over the course of this litigation.

### v. Customary Fee for Like Work (the Fifth *Barber* Factor)

As detailed in the affidavits and declaration accompanying this fee request, the hourly rates charged in this case are reasonable. Mr. Lesemann's hourly rate was $375 per hour and remained at that rate during the entire case. Mr. Lesemann delegated specific tasks to associate attorneys and paralegals working directly under his supervision. The hourly rate for associates was $295 per hour and $125 for paralegals. Ann Cunniffe's billable rate was $125 per hour, which was not increased to an attorney rate even after she reinstated her law license and capably performed attorney-level work. The billing rates for the attorneys and paralegals as set forth in the invoices are reasonable and customary rates for persons of their respective experience

Mr. Horton, Mr. Kropski, and Mr. McLaughlin are local lawyers who are familiar both with the skills of the undersigned counsel and more generally with the type of work in the relevant community. *See Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990) (finding that fee applicants may draw from a range of sources in demonstrating the prevailing market rates including "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community"). Mr. Horton, Mr. Kropski, and Mr. McLaughlin each expressed the opinion that the hourly rates charged in this case are below the rates billed in the prevailing markets for similar services offered by attorneys of reasonably comparable skill and experience. *See, e.g.,* Kropski Aff., at ¶¶ 10 – 14; McLaughlin Aff., at ¶ 9; Horton Decl., at ¶¶ 7 – 9, 15. This evidence, along with the Court's own knowledge of the rates awarded in similar cases, establishes this factor in favor of the requested award.

The affidavits, declaration, and supporting documentation are sufficient to demonstrate the reasonableness of the fees requested by Oakwood. *See Plyler*, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the

prevailing market rates in the relevant community for the type of work for which he seeks an award."). This factor supports a finding that the fees and expenses requested are reasonable.

      vi.    **Attorney's Expectations at the Outset of the Litigation (the Sixth *Barber* Factor)**

Compensation was not contingent in this matter. *See* Lesemann Aff., at ¶ 19. The undersigned counsel has invested substantial amounts of time in prosecuting this case for which it has been paid upon sending monthly invoices to our client. *See Liberty Mut.,* 176 F. Supp. 2d at 535 (finding the sixth factor, "which generally implicates contingent fee arrangements, is irrelevant in the instant case because plaintiff's counsel did not have a contingency agreement with Liberty Mutual and 'contingency multipliers may not be allowed in statutory fee cases.'").

      vii.    **Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)**

Neither the client nor the circumstances presented any specific time constraints during the litigation, which extended over several years. *See* Lesemann Aff., at ¶ 20. This factor is neutral.

      viii.    **Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)**

An award of the full amount of fees and expenses requested is appropriate in this case based on the amount in controversy and the results achieved by Oakwood as the prevailing party. The amount in controversy included amounts paid to SWK, amounts paid for software licenses, amounts incurred to resurrect the Sage system, and the value of lost time. *See* Lesemann Aff., at ¶ 21. The results obtained at trial vindicated the actual harm suffered by Oakwood, as well as serves the public policy objectives of SCUTPA in discouraging unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce.

Courts have consistently looked at degree of overall success in determining the reasonableness of a fee award. *See, e.g., Hensley v. Eckhart*, 461 U.S. 424 (1983). In total,

Oakwood presented evidence of damages in the amount of $562,820.29. The jury awarded $275,000.00 in damages under four causes of action: (i) violation of the South Carolina Unfair Trade Practices Act; (ii) breach of contract; (iii) breach of warranty; and (iv) unjust enrichment. Although the jury awarded Oakwood less than the full amount requested at trial, Oakwood was able to achieve the result that it sought in this litigation by obtaining a jury verdict against both SWK and Acumatica for liability under SCUTPA. Obtaining less than the full amount requested is quite common. *See Super Duper, Inc. v. Mattel, Inc.,* No. 6:05-1700-HFF-WMC, 2009 WL 866463, at *1 (D.S.C. Mar. 31, 2009), *aff'd,* 382 F. App'x 308 (4th Cir. 2010) (noting that "[r]are is the case in which the claimant is both successful on every claim and receives the award amount that she seeks"). It is recognized that "counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." *See City of Riverside v. Rivera*, 477 U.S. 561, 592 (1986) (confirming award of attorney's fees in the amount of $245,456.25 following an award of $33,350.00 in damages). Additionally, the fee award sought is already lower than what would be expected if actual market rates were used and discounts had not been applied.

Furthermore, although the fees and expenses sought by Oakwood exceed the amount of the verdict, this should have no bearing on the Court's determination of the amount of reasonable fees. Statutes often create a right to recover attorney's fees to encourage that meritorious claims be pursued and rights be vindicated even though litigation costs can exceed the amount recovered. *See Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 385, 377 S.E.2d 296, 297 (1989) (reversing decision by the Court of Appeals and reinstated fee award that exceeded actual damages by more than 50% and confirming that "[c]ourts in other jurisdictions have awarded attorney fees which exceeded the verdict obtained"); *see also* S.C. Code § 37-5-202 ("[i]n determining attorney's fees

[in a consumer protection code action], the amount of the recovery on behalf of the consumer is not controlling"). The amount in controversy and the results obtained are favorable to Oakwood.

> ix. **Experience, Reputation and Ability of the Attorney (the Ninth *Barber* Factor)**

The experience, reputation, and ability of the attorneys performing legal services in this case provides further support for a favorable finding as to the ninth *Barber* factor. The primary attorney involved in this case on behalf of Oakwood is Ellis R. Lesemann, Esq., who is a member in good standing with the South Carolina Bar.

Mr. Lesemann has represented clients in complex business litigation and contract disputes over the course of 27 years. Mr. Lesemann received his undergraduate degree from the South Carolina Honors College at the University of South Carolina after spending two years in the Honors Program at the University of Michigan at Ann Arbor. Thereafter, in 1998, he completed the four-year joint degree program in Law and International Business Studies (JD/IMBA) at the University of South Carolina and was admitted to the South Carolina bar in November 1998. Mr. Lesemann has been listed or recognized by Chambers USA, Best Lawyers in America, Super Lawyers, the Multi-Million Dollar Advocates Forum, the Charleston Business Magazine, the Greenville Business Journal, and has been rated "AV" by Martindale Hubbell. Over the course of his practice, Mr. Lesemann has successfully handled complex business litigation cases, including claims for fraudulent conveyance, copyright infringement, antitrust claims, and other matters, as well as a number of complex negligence and wrongful death actions.

Other attorneys and paralegals working collaboratively but with supervision have also been involved in the representation of Oakwood in this matter. Benjamin A. Joyce has been practicing for twelve (12) years, after graduating from the Charleston School of Law with a J.D. in 2012 and the University of Georgia in 2007. Michelle A. Stewart, who is particularly experienced in

assisting with briefing of complicated legal issues, also contributed to the prosecution of Oakwood's claims where needed or appropriate. Ms. Stewart graduated from the Charleston School of Law in 2012, and from the College of Charleston in 2008 with a B.A. in Philosophy. Ann Cunniffe graduated from the University of Virginia in 1999 and from the University of South Carolina School of Law in 2003. After graduation, she served as a law clerk to the Honorable Judge Howard P. King in Sumter, South Carolina. She has legal experience in the areas of business litigation, personal injury cases, and disputes with state and local governments.

The affidavits and declaration accompanying this fee petition also demonstrate that the experience, reputation, and ability of Oakwood's counsel justify the fees and expenses requested. *See, e.g.,* Kropski Aff., at ¶¶ 12 – 14; McLaughlin Aff., at ¶¶ 7 – 9; Horton Decl., at ¶¶ 14 – 15.

    **x.** **Undesirability of the Case Within the Legal Community in Which the Suit Arose (the Tenth *Barber* Factor)**

As indicated in Mr. Lesemann's Affidavit, neither the case nor the client was undesirable. *See* Lesemann Aff., at ¶ 32. This factor is neutral.

    **xi.** **Nature and Length of the Professional Relationship Between Attorney and Client (the Eleventh *Barber* Factor)**

Mr. Lesemann has previously represented Oakwood in legal matters separate from the pending case. As stated in his sworn Affidavit, Mr. Lesemann believes it is of the utmost importance to diligently represent his clients through the successful litigation of their cases. *See* Lesemann Aff., at ¶ 33. The quality and quantity of legal work performed in this matter is illustrative of this objective.

    **xii.** **Attorneys' Fees Awards in Similar Cases (the Twelfth *Barber* Factor)**

The amount of fees and expenses sought by Oakwood is comparable to those that have been awarded by South Carolina courts in complex business litigation matters, including the

following: (i) an award of fees in the amount of $550,000.00 in case involving claims of breach of fiduciary duty, fraud, conversion, misappropriation of trade secrets, and unfair trade practices;[2] (ii) an award of $573,785.28 in attorneys' fees to a successful plaintiff in an action brought under SCUTPA;[3] (iii) an award of $524,068.00 in attorney's fees and costs following a trebled jury verdict of $108,726.00 entered in 1998 under SCUTPA;[4] (iv) an award of fees in the amount of $2,643,844.15 following a jury verdict of $400,000.00 in a complex trademark and patent infringement case litigated over more than three years and that involved experienced in-state and out-of-state counsel;[5] and (v) an award of $857,341.20, including $748,703.38 in fees and $108,637.82 in costs and expenses, to a successful defendant in a contract and unfair trade practice dispute.[6]

A significant fee award was entered against commercial defendants found to have violated SCUTPA in the case of *Maybank v. BB&T Corporation*, 416 S.C. 541, 787 S.E.2d 498 (2016). In *Maybank,* an investor brought an action against an investment advisor for, among other things, a violation of the South Carolina Unfair Trade Practices Act for recommending alternative investment strategies and products that generated fees and profit for the bank but caused grave financial damage to clients like Maybank. The jury awarded $3.1 million in actual damages, and

---

[2] *See GTR Rental, LLC v. DalCanton*, 547 F.Supp.2d 510, 524 (D.S.C. 2008).

[3] *See Sonoco Prods. Co. v. Guven*, No. 4:12-CV-00790-BHH, 2015 WL 127990, at *14 (D.S.C. Jan. 8, 2015).

[4] *See Taylor*, 331 S.C. at 582, 503 S.E.2d at 462 (confirming that "there is no requirement that an attorney's fee be less than or comparable to a party's monetary judgment").

[5] *See Super Duper,* 2009 WL 866463.

[6] *See Palmetto Health Credit Union v. Open Sols. Inc*., No. 3:08-CV-3848-CMC, 2011 WL 11702, at *9 (D.S.C. Jan. 4, 2011) (making award to successful defendant based on prevailing party provision in contract).

$5 million in punitive damages. Upon motion by Maybank, the court trebled the award of actual damages from $3.1 million to $9.3 million and also granted Maybank's motion for attorneys' fees and costs totaling $2,654,295.00 for fees and $245,011.00 for costs. *Id*., 416 S.C. at 563, 787 S.E.2d at 509.

The above cases reflect the attorneys' fees that can properly be awarded in complex business litigation cases such as this one. The amount requested by Oakwood is comparable and does not deviate from the amounts awarded by courts in South Carolina.

### B. Both Defendants Have the Ability to Pay the Full Amount of the Fees Requested.

As indicated by the materials submitted in conjunction with Oakwood's fee petition, both SWK and Acumatica have the ability to pay the fees and expenses requested by Oakwood. *See* Local Civ. Rule 54.02(A) (D.S.C.) (providing that a petition for attorney's fees shall state the ability of the party to pay the fee).

Acumatica is able to pay the requested award. Acumatica is a wholly owned subsidiary of EQT and operates as a fully independent company. *See* Announcement of EQT's Acquisition of Acumatica, attached as Exhibit I, and Acumatica Company Page on EQT's Website, attached as Exhibit J. EQT is a publicly traded global company that is listed on Nasdaq Stockholm. Although Acumatica's financial performance is consolidated basis with EQT's other businesses, the 2024 Annual Report indicates that EQT's consolidated net income from continuing operations was € 776,000,000.00 for the year ending December 31, 2024. *See* 2024 EQT Annual Report, at pg. 6 ("Key Financials"), attached as Exhibit K. This converts to approximately $803,160,000.00 of profit last year.

SWK is also able to pay. SWK is a wholly owned subsidiary of QXO, which is also a publicly traded company. The announcement of QXO's name change from SilverSun

Technologies and that SWK is now owned by QXO is attached as Exhibit L. The 2024 Annual Report for SWK's parent company, attached as Exhibit M, indicates net income during 2024 in the amount of $27,969,000.00. Ultimately, it is not anticipated that either Defendant will contest its ability to pay the fees and expenses due as a result of the unfair and deceptive practices committed.

**III.    SUMMARY OF FEES AND EXPENSES REQUESTED UNDER SCUTPA (INCLUDING TAXABLE COSTS)**

Oakwood respectfully requests that the Court enter an order in the amount of $551,708.01, which represents the attorney's fees and non-taxable expenses incurred through the last day of trial on Friday, May 16, 2025, plus the additional attorney's fees incurred in connection with Oakwood's post-trial Motion for Attorney's Fees and Expenses. *See* Table of Fees Incurred in Preparing Fee Petition and Bill of Costs, attached as Exhibit N. In support of Oakwood's request for an award of attorney's fees incurred to prepare the post-trial fee petition is the Supplemental Affidavit of Ellis R. Lesemann, Esq., attached as Exhibit O.

The categories of the amounts requested are shown below:

| Non-Prevailing Parties | Fees and Expenses Up To Verdict | Fees to Prepare Fee Petition | Non-Taxable Costs | Taxable Costs | Total Fees and Expenses |
|---|---|---|---|---|---|
| **SWK and Acumatica** | $510,665.76 | $8,132.50 | $14,080.90 | $18,828.85 | **$551,708.01** |

To confirm, the amounts shown in the table **include** the amount of costs that Oakwood believes are taxable to Defendants under Fed. R. Civ. P. 54(d) and the Bill of Costs being filed. Under applicable law, all $32,909.75 in expenses (taxable and non-taxable) should be recoverable under the mandatory fee provision of SCUTPA.

**Any costs that are taxed against Defendants under the Bill of Costs should be deducted from the amount of expenses being requested under this Motion, as no expense is sought to be recovered twice**. Conversely, any expenses included on the Bill of Costs that are not ultimately taxed to Defendants should be awarded under this Motion, provided that the Court confirms that the expense is reasonable and proper.

## CONCLUSION

For the reasons discussed above and in the supporting affidavits, declarations, and materials accompanying this fee request, Plaintiff Oakwood Products, Inc., respectfully requests that the Court award Oakwood the full amount of reasonable attorney's fees and non-taxable expenses requested pursuant to the South Carolina Unfair Trade Practices Act against Defendants SWK Technologies, Inc., and Acumatica, Inc., in the amount of **Five Hundred Fifty-One Thousand Seven Hundred and Eight Dollars and One Cent ($551,708.01),** along with such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*s/ Ellis R. Lesemann*
Ellis R. Lesemann, Fed. ID No. 7168
erl@lalawsc.com
LESEMANN & ASSOCIATES LLC
418 King Street, Suite 301
Charleston, SC 29403
Phone: (843) 724-5155

***Attorney for Plaintiff Oakwood Products, Inc.***

Charleston, South Carolina

May 30, 2025